This next case is 4-14-0941, Board of Education of Springfield School District 186. For the appellant is Mr. Schmidt. For the appellee is Ms. Burkett. Mr. Schmidt, are you ready to proceed? Yes, sir. You may. Thank you, Your Honor, and may it please the Courting Council. My name is John Schmidt. I'm an Assistant Attorney General, and in this case I represent the Attorney General who was the final administrative decision maker here under the Open Meetings Act. And the Attorney General found several Open Meetings Act violations on the part of the school board. Only two of them are at issue here, and they both involve violations found of Section 2E of OMA, the Open Meetings Act, and I'll refer to it as OMA sometimes if that's all right. The first sentence of Section 2E of OMA says that no final action may be taken at a closed meeting. The Attorney General concluded that final action was taken at the February 4, 2013, closed meeting when six of seven school board members signed a separation agreement with the board's superintendent. As of that moment, did the superintendent no longer have a job? He had a job until March 31st under the terms of the agreement, I believe. So the separation agreement, without further, when they signed it, was fully effective? Your Honor, that's hard to say. Isn't that the question presented to us and presented to the Attorney General? It is, I think it is, an important question in the case. I think it's, according to the terms of the agreement, it seems as though it would have been effective. The parties were representing at the time, one term of the agreement did represent, that the parties who entered into the agreement had authority to do so. But also, even if the agreement was not effective at the time, the board's response when this request for review was filed, alleging improper final action in February was, we had a subsequent open meeting and we took a valid vote that would have approved the settlement agreement. And our position, the Attorney General found that that was not the case because of the second sentence of Section 2E, which says that final action shall be preceded by a public recital about the nature of the matter being considered, and other information that will inform the public of the business being conducted. At that meeting, to avoid the problem on March 5 that the Attorney General cites, what should the board have done? The board should have preceded its final vote with a short description of the terms of the agreement. Why short? Well, if the board wished to do a more extensive one, that's fine. We believe that a summary of the key terms of the agreement would have been sufficient. What about posting the agreement online five days beforehand? Why wouldn't that suffice? Because Section 2E, we believe, should be construed as requiring that the recital actually take place at the meeting itself. So someone who is interested in what was going on at the Springfield School Board, the superintendent, if they check five days in advance when this separation agreement was posted, and check that day, and there it was, that's not enough notice? Well, that's commendable that they did that, but there is a possibility that people attending the meeting might not have seen the agenda on the website. And, in fact, at that meeting, a lot of people were there primarily because of a different issue, which was the closure of a Springfield school that was a college preparatory academy. And they were told that the school was being closed for budget reasons. And I think 26 people made public comments about that. They may well have been interested in knowing, in terms of the budgetary reasons being given, that the superintendent's separation agreement involved a fairly substantial amount of compensation to him. But if they hadn't been interested in that issue before and hadn't looked at the agenda, they wouldn't have known. So a public recital wouldn't be enough to say, we're next going to be calling upon to vote on the question of the termination of the superintendent. Based upon the separation agreement, some members of the Board have signed, and it's he that's online and it's been online and it's online right now. Is that enough? I don't think it is, but that's better than what happened. That's at least better. And perhaps this Board would think that that's enough, and I can see where it might. But that didn't happen here either. Where do we go to find the minimum requirements for notice? How do we determine that? Well, I think in part the Attorney General's determination of that is entitled to some deference. But I think it's hard to find guidelines. But the language of Section 2E does say that information must be provided that would inform the public of the business being conducted. And I think a reasonable member of the public who just heard that it involved a separation agreement with the superintendent, which is all that was really said at the meeting, wouldn't have been adequately informed about the business being conducted, unless, as Your Honor pointed out, if they had seen the separation agreement. Was there a requirement in the Open Meetings Act that the separation agreement be posted? No. No, Your Honor, there was not. And, again, I think it's commendable that the Board did that. I was going to say, thus in response to the category, Council of no good deed shall go unpunished when we have the school board five days before the meeting presenting the entire agreement for the consideration of any interested citizen. There it is. And then their roll call action says 9.1, regarding the separation agreement released between Superintendent Dr. Walter Milton, Jr. and the Board of Education. There it is. And had they said what I said. By the way, we have talked about this, and we've had an agreement, and we're not going to vote on it in public and not put it up online. Apparently that would have been enough. And it seems to me like that's not the kind of behavior we want to further or commend under the Open Meetings Act. And I'm surprised the Attorney General wouldn't have said bravo, school board, for posting this as you did. Well, actually in my reply brief I said, very good, that was commendable. And indeed it was. But the purpose of finding this violation isn't really to punish the school district either or the school board. We believe it's to further OMA's purpose, which is assuring that people are informed about the conduct and the actions of public bodies. And here the board did take one very good step. I think in terms of the agenda requirements, Your Honor's right, they went beyond those. But we think they also needed to meet the public recital requirements as well. And that's the main thing the finding opinions are trying to point out. And again, the purpose isn't so much to punish but to advise and to try to assure better compliance in the future. And in this case, going back to, again, there were two violations found. But what happened basically, and I may have explained this before, but I think it's just an important point to emphasize. The charge that was filed by the reporter in this case said that improper final action was taken at the closed meeting. And the board's defense, again, was we took valid final action at the March 5th open meeting and took an open vote. But again, the Attorney General decided that that was not sufficient because of the public recital requirement. And the Attorney General's decision is not as drastic, I think, as some of the amici amici have set it out to be. They said that the decision would require the entire agreement to be read out loud. And that simply is not the case. Again, what the Attorney General found was that a summary of the key terms should have been provided before the vote was taken. And that would have been sufficient. And I think that probably would have taken about one minute or so to accomplish. The Attorney General also found that aside from that, that the February 4th, 2013, closed meeting action of signing the separation agreement did constitute invalid final action. And the board relies largely on the Grissom and Jewell cases to say that it's proper to take straw votes in a closed session and then vote in an open session. We think it's a little different here where the board members actually signed the agreement. Although, as the board does point out, the agreement was not dated. They did leave the date off the agreement. But we think that's different. But there's also some indication in the record that the board members would have considered the agreement binding before it was finally approved or before the March 5th meeting where the vote was taken to approve it. At a February 18th open meeting, there was some discussion about what could be said about the agreement. And the board's attorney basically said, it's simple, go by the agreement, which had a confidentiality clause. And later said that the board could say they were going to take a public vote on the agreement later on, because that was not anything substantive about the agreement. It appears that what happened is that the reason the public recital didn't take place is that the board was operating under the impression that it couldn't discuss the terms of the agreement at the time. Even though, as Your Honor pointed out, they did post it. But we feel that the attorney general found that OMA did require at least some summary of the agreement's key terms in order to meet the public recital requirement. So the March 5th, 2013 approval was not valid for that reason. To what extent can this court look to the posting online five days before the meeting as satisfying the public recital requirement of the statute? Your Honor, I think that's up to this court. But here's the way I think. The AG didn't think so. She didn't think apparently it was worth anything in that regard. Well, that's our position. Why shouldn't we agree with it? Why shouldn't we say, there's this public recital requirement, and by God, the Board of Education did a wonderful thing by posting the entire 16-page agreement right there five days in advance. And to the extent that the legislature was concerned about openness and making sure everyone has this available, this exceeded the requirement and certainly met all of our expectations on openness. Why shouldn't that be the conclusion? I think because there are separate requirements for agendas set out in Section 2.02 and for the public recital in Section 2e. And Section 2e would seem to recoup. I think the language of that, if you construe those provisions together, 2e concerns more what happens at the meeting itself. And I would think if the court rules in our favor, it should say that Section 2.02 and Section 2.02. The Board did something commendable by posting the agenda, but simply say that it should have taken one step more. And for the people who were actually at the meeting, given a short public recital. And we don't mean this to come off as being, again, I don't think the purpose of this is so much punishment. As education, educating public bodies and educating the public about the requirements of OMA. And the Attorney General Act in creating the Public Access Counselor emphasized the importance of education. But I think the key question in making the determination, Your Honor, is the word precision. And I think it's preceded, probably. If preceded means any time before, absolutely any time before the final action, Your Honor should rule in favor of the Board. Because they did post the agreement beforehand. But if preceded means, and there are some dictionary definitions that would support this view. If preceded means prefaced or introduced, which would suggest immediately before, then we're correct. And I think because of the structure of the Act, I think reading the agenda requirements of Section 2.02 together with Section 2E, 2.02 concerns what needs to be done, the type of notice that needs to be given in advance of the meeting. And Section 2E concerns the information that needs to be given at the meeting itself. And we think that's a more reasonable construction. All right. Thank you, Counsel. You'll have time in rebuttal. Thank you very much, Your Honors. Ms. Burkett, would you prefer to make argument from the Counsel table? Well, that would be nice. Thank you. I think given the situation, that would be advisable. I appreciate that. I appreciate that. All right. You may proceed. That would be fine. I've just gotten on the precious. I'm a little bit late there because I'm not incredibly stable yet. Your Honors, you may please report to Counsel. Would you answer a couple of the questions that came up during Counsel's argument? An agenda is not a static item. It does not just occur for purposes of 2.02. It is a living part of the meeting. It guides the meeting and informs people what is going to occur at a meeting. The agenda item included the PDF of the entire agreement, as Your Honors noted. So, the agenda is part of the meeting. The PDF is part of the agenda. It was part of the meeting. You can't divorce those two things. The agreement was certainly not effective at the time that it was signed on February 18th. If either party had tried to enforce any one of those terms, it would have failed. Because there had been no public action. And this party is well aware that a final action can't be taken in a closed session. So, nobody could have enforced the terms of that agreement at that time. As it goes to a short description of the terms of agreement, or the summary of the key terms that the AG should have recited, what are the key terms? Is it money? Is it indemnification? Is it confidentiality? Is it the reference that the board will give? Or how they will speak of this matter? There are dozens of different opinions as to what's key in an agreement. I can say that for a departing superintendent, what is really key is, what will the board say about me after I'm gone? Sure, money is important, but it's not as important as that. So, who determines what's key? And that's an issue with the interpretation that the AG has placed on this. The AG says that this is a little different here because the board members actually signed the agreement. But if this court recalls in your decision in 1977 in Grissom, the board there was determining whether or not to dismiss a tenured teacher. They discussed it in closed session. They reached a decision in closed session. They signed the resolution that would effectuate the dismissal of that teacher. It would start that process. So, it was the exact same conduct. The agreement or the document that would effectuate the termination was signed in closed session in Grissom and by the board in this case. And this board said that it is the open final vote that is key for the purposes of OMA because that tells the public which position each one of their elected officials took on any given issue. And in this case, the public knew that six of the board members voted in favor of terminating Dr. Milton's employment and one voted against it. So, we fulfilled the requirements of the final action. In terms of the comments that were made at the February 18th meeting by Rob Cross to the board, the board members were saying, what do we say when people ask us? What do we say about this agreement? They were talking about what they say as individuals who happen to be members of the board.  So, Rob just simply said, go by the agreement. That means don't talk about it. They don't have authority to talk about it outside that board table. A lot of people really don't understand, including the board members, that their authority is at the table. So, it had nothing to do with the recital or the actual meeting. It was, please don't, as individuals, talk about this before there is a final vote. Dr. Milton has rights. This is a personnel matter. Just like all other personnel matters, keep it confidential until there is a final vote. And that was the discussion. I think that what's important, too, in our differences is that it is the board's position that they know what we do. The historical facts are not in dispute at all. What is in dispute is the Attorney General's interpretation of the governing provisions. That's Section 2B of the Open Meeting Act. The interpretation of the statute is, of course, a legal question. And as this court found in Sidio Champagne v. Magnum in discussing FOIA, that legal question requires a legal review. And this review requires that two questions be answered. When was the final action taken? And was there a public recital of the nature of the matter being considered, and other information that informed the public of the business being conducted? Now, the Attorney General conflates those two questions. It's a circular kind of thing. Well, we think you took final action in closed session, but even if you didn't, you didn't proceed it by the right recital, so you didn't take final action. But they're two separate things. There's final action, and there's the public recital. You could take final action that ended up not being proper because of a lack of a public recital. But they're not all mixed together. They're separate questions. There are cases that control. There's still good law, and that's Grissom and Jewell. The Attorney General has said in his opinions, binding opinions, that those were no longer applicable because of the 1989 amendment to the Open Meetings Act. That amendment added that public recital language that I've just read to you. It did not change the very straightforward prohibition, no final action may be taken in closed session. The Attorney General turned to legislative history to support its argument that the 1989 amendment somehow changed when final action occurred. And they relied on a quote from Senator Kate Phillips, actually only a partial quote, that said that final action was being redefined. There was no need to resort to extrinsic evidence, because there's nothing ambiguous about no final action may be taken in closed session. Very straightforward. So that was a reason there should not have been any resort to that. But the second reason is that the legislative history itself is ambiguous. Kate Phillips says that, but the whole quote says something about some dispute between state's attorneys and someone else, but doesn't say what the dispute was about. And just simply says, this clarifies it. It was about as clear as much to me when I read it. And then there was further legislative history where Senator McCracken said, the only change to Section 2 is that we're adding this public recital requirement. No mention that final action has been redefined. But the Attorney General used that history to decide that in fact that one line had been redefined. The change, the 1989 amendment did not change that prohibition. And so the salient reasoning and the binding effect of Jewell and Grissom remained undisturbed. And the facts in those cases were so similar to this that they could have been the same case. I already said what happened in Grissom. In Jewell, the board was in closed session and was deciding whether to non-renew a probationary teacher or to give her tenure. The board took a vote in closed session and voted to non-renew her. And they drafted the motion that would effectuate that non-renewal. In open session, the board secretary read the motion and there was a roll call vote. And again, the 5th District found, just as this court did in Grissom, that what happened in closed session was not the final action. The deliberative process, of course, is protected both by OMA and by OIL. And when they come out into open session and they have to put their mouths where their money is, I guess, they have to say where each of them stand. That's what's important in terms of informing the public. First question I asked Mr. Schmidt was, what was the effect of the signing of the agreement on January 31? What was the effect? Really, it was not. There was no effect. Was his job terminated at that point? It was not. Effective at the end of the month? No, it was not terminated at that point. So if no further action had occurred, he's still superintendent of schools there after March 31? Absolutely. Absolutely. That agreement could not have been enforced. So that part of this case is controlled by law. It's already out there. And it's the court's decision on this part of it. And that was affirmed by the Supreme Court in Grissom in 1939. The second question, of course, is the public recital. Was it enough? And I think it's this part of the question that shows the true flaw in the AG's thinking. The fact, when it made its decision, said that the language that I've already read to you, that there has to be a public recital of the nature of the matter being considered, and other information that will inform the public of the business being conducted, actually means that the public body must provide a verbal explanation of the significance of its actions to members of the public who are present at the meeting, before the public body can proceed to consider taking action. The members of the public in attendance at the meeting must receive sufficient other information to understand the business being conducted. And the recital must be such that the public might comprehend the purpose and effect of the board's actions. I submit to you that there is no way any board can figure out whether the members of the public understand what they are doing. Even after reading the entire agreement, I am sure there were plenty of members of the public who did not understand this. That's why people don't understand contracts, right? There isn't any requirement to explain the significance. And it was this that bothered the circuit court, that this was an expansion, an impermissible expansion, of the plain language of 2E, which only requires a public recital. Now, this, your honor, has already said what was read at the meeting by the board president. After the board president read that resolution, the agenda item, one of the other board members moved to table it after some parliamentary struggling. There was a discussion on the second motion to table. This board member talked about how she didn't believe Dr. Milton should be leaving. She didn't understand why this was happening, and she didn't support the signing of the separation agreement, That motion died for a second, and then one of the other board members thanked Dr. Milton for his service and wished him well. So, the nature of the matter was Dr. Milton's employment. The other information as to the business being conducted was that it was going to be terminated through the use of the separation agreement and relief. The public was informed at the meeting about what was happening. And, of course, it was pointed out that it was informed five days in advance about every single provision, not just the key ones, of the separation agreement because it was free to read it. The board did go above and beyond what it was required to do. But, I don't want to lose sight of the fact that the retitled act meeting itself and the discussion that followed was sufficient to tell the public about the nature of the matter, the employment, and the business being conducted, the separation of that employment. The AG does not explain to us why giving more information somehow violates this act. The very purpose of which is to make sure that the public is informed because it has a right to be informed. It's a hyper-technical reading of this section 2E. And, as Amici has pointed out, it definitely could lead to problems. This was a separation agreement, but a board at any given time also considers debt instruments, collective bargaining agreements, construction agreements. Anybody who's ever read an AIA construction agreement knows how difficult it is to pick out any term, much less know for certain which are the key terms. What is the board to do about that? And then, in addition to that, boards use consent agendas all the time. They do that for accounts payable, to approve payroll processing, routine contract renewals. In fact, at this meeting, one agenda item on the consent agenda, item 8.1, had 32 pages attached to it, 10 vendors on every page, dozens of entries, all about money being spent. And it was approved through the consent agenda. The board had to read all of that. Was that posted, too? Yes, that was posted, too. How about this question? Was there anything on the agenda that was not posted? No, not any action papers. They don't post anything necessarily with the whole business or something like that. They're not action papers. How long had this practice of posting these things on the Internet been going on for the Springfield School Board? It's been going on since they were required to have a website. So ever since then, they've been posting. How long has that been? You know, I can't tell you. Years? But it's been years. It's been years. As long as I can remember dealing with it. Well, the reason I ask that is because implicit in Mr. Schmidt's argument is the notion that, gee, an interested citizen, and of course the question is how many interested citizens actually show up to school board meetings. Well, there are some. But an interested citizen would not know to find this information on the website, would have to be told about it at the meeting where, seemingly for the first time, this revelation of what's going to be coming up would occur. The fact that you've been doing this, the board's been doing this for years, suggests that this argument isn't solved. And I agree with you 100%. They have been doing it for years, and the public does know to go to that website. And families use it. The general public uses it. It may not be in the Record Council, but I suspect you would know. Is this a fairly common practice at this stage of school boards to post stuff? And by the way, what statute was it that requires them to have a website? Section 2.02 of the Open Meeting Act. They're required to have a website. Requires a website. If you have a website, you have to post your agendas on the website. So it doesn't require a website, but once you have one, it must be used to post your agendas. Obviously, this is so much better than it was before where you had to go to the school building, read the agenda on the door, and there was no information there. So in terms of complying with the purpose of the Act, this was a very informed public. Any other questions? Thank you. Thank you, Counsel. And thank you for the consideration. You're welcome. Rebuttal argument? Thanks. Just a couple of points. One is on the standard of review, and I think that's a close call. We've argued clearly erroneous. They've argued de novo. But even if de novo is the standard of review, the Attorney General's decision still does get some deference, even if it's a matter of statutory interpretation, because she and the public access counselor do help administer the Open Meetings Act. And Counsel spoke about open votes advising the public of which position the board members have taken. That's true, and it is important. But I think it is also required to, you know, give the public information that will inform them of the business being conducted. Otherwise, when they take the open votes, the public doesn't really know what positions that the board members are taking. And certainly, again, the board did comply with the agenda requirements, and I think, as I've even said in the opening argument, probably overcomplied with them. But Counsel's mentioned the possible inconvenience to public bodies and to school boards, but I think the Open Meetings Act is really about the public and not so much about public bodies, and assuring that public bodies are doing all they can to provide information about what they are doing. And, you know, as Your Honors, as Justice Steigman pointed out, the board did do a very good thing by not only posting its agenda, but by posting a link to the separation agreement. Our only conclusion, the binding opinion, though, is they just should have taken the one additional step, and at the meeting itself, for people who might not have seen the agenda, also engaged in a brief summary of the key terms. And OMMA may not have language saying, summarize the key terms of the agreement, but Section 2E does have language saying, provide the public that the information that will inform it of the business being conducted. And in the context of this case, the Attorney General construed that as meaning, at least summarize the key terms of the agreement. And we would just ask that the binding opinion be reinstated. And I thank the Court for its attention. Thank you. Thank you, Counsel Pogue. The case will be taken under advisement and a written decision shall issue. Thank you. I'm so much more aware of the foundations now. Yeah. Great job. Great job, too. Thank you so much. Good luck with the presentation. Yes, I'm anxious to go home. Thank you. Please take care. Thank you. Have a good day. You, too. No, just leave it there, please. I can get things in my hand. You came through the Westside Institute, didn't you? I came through here, yes. Okay, good. I want to make sure you knew about that. Yeah, the guard helped me. Okay. That's all we have. Thank you.